Case number 20-7043. Communications Workers of America, AFL-CIO Appellant versus AT&T Inc. Mr. Anderson for the appellant, Mr. Baskin for the appellee. Good morning, counsel. Mr. Anderson, please proceed when you're ready. Good morning, your honor. Michael Anderson for the Appellant Communication Workers of America. AT&T and the communication workers have a contract that governs the definition of bargaining units and all parties agree that under this agreement that those workplaces that existed as of the commencement of this contract would be subject to binding arbitration about the scope of bargaining units through this arbitrator. The question that comes up here is that during the term of the contract, AT&T acquired Time Warner as a component of its broader corporate family and the union contends that under this agreement the union is entitled to the same bargaining unit determination through the arbitrator as applied to those workplaces that existed at the outset. Now there is a paragraph of this agreement that speaks to this. It's about the recognition of new entities and new work which expressly covers what happens when AT&T acquires new companies. Now as the district court in AT&T read this provision, it means that there is absolutely no binding right to arbitration. That in effect everything in the agreement except for auditory right to use best efforts to meet and confer that nothing binding in the contract applies as to those acquired operations and if that were true we would have expected parties to draft the agreement to say this agreement shall not apply but that's not the what the parties wrote. The paragraph six of the agreement says that if the company acquires new companies then the parties agree that this agreement shall apply to that acquired company and the fundamental point the union makes here is that when the parties reference the agreement shall apply they expect that the arbitration provision that is embedded within that agreement shall also apply. Can I ask you a question Mr. Anderson? Yes. So under paragraph nine of the agreement paragraph nine says with the exception of matters referenced in paragraph 3c above the meaning or application of this argument shall not be subject to arbitration. So the agreement specifically says that some things are subject to arbitration and some things are not. Absolutely and and as I understand the the question the Supreme Court is currently considering in the Henry Schein 2 case it it dovetails with that kind of provision because it has to do with the circumstance in circumstance in which the agreement provides for arbitration over some matters and carve outs over others and I guess my question is do you agree that the question that we have before us is bound up in the question that the Supreme Court has before it now in the Henry Schein case? Yes I do and if the Supreme Court reverses the fifth circuit in Henry Schein it would not be necessary nor appropriate for this court to speak to the merits of the argument that's presented in Roman numeral one of my brief. You would simply refer that dispute to the arbitrator. Right and the very the very issue before the Supreme Court is whether the issue gets referred to the arbitrator. Absolutely. It's the arbitrability question at the outset as opposed to the proper construction of the agreement. This court should not decide this case until you hear from the Supreme Court in Henry Schein. Mr. Anderson isn't I mean the general rule about determining who who determines arbitrability is a question of contract interpretation. So I mean the contract here is obviously different from the contract in Henry Schein right? I mean it has it has a general rule of no arbitration and then a specific area in which arbitration is to go forward. So I'm not sure that the contracts are necessarily analogous enough and in any event the court has to interpret the contract in order to determine the question of arbitrability. That's true but in agreeing to proceed under AAA rules the parties agree that arbitrator's authority that is which disputes fall across the line of what is arbitrable and what is not is delegated to the arbitrator and the court can't frame a consistent rule of law based on how big the carve-out is. Well I guess I wouldn't say this is a carve-out. I think I mean this is a different kind of case because in most of those other cases there's an arbitration provision that says something like all disputes to be governed by arbitration under AAA rules maybe except for a few. But here I mean section 3c is very specific about the narrow things that would be arbitrated. It says the issue of the description of such unit shall be submitted to arbitration and then it goes on to say the arbitrator shall be confined solely to the determination of the appropriate unit for bargaining. And I think if you read that in section 9 which says with the exception of matters referenced in paragraph 3c the meaning or application of this agreement shall not be subject to arbitration. I mean reading all of that together doesn't suggest a clear and unmistakable intent to leave questions of arbitrability to the arbitrator. That's correct as a general matter except here the union is coming to the arbitrator or wants to come to the arbitrator to say we think that this is an appropriate unit that needs to be determined by you. And to the extent that there's a dispute over whether Time Warner units fall within the scope of the arbitrator's authority that's exactly the kind of thing that's delegated under the AAA rules. Well that goes to whether the dispute is arbitrable. It doesn't go to the dispute about whether a court or the arbitrator should decide arbitrability. Yes, but the point is there's a dividing line here between what's arbitrable and what's not. And it's the parties disagree about whether the Time Warner units fall on what side of that line. And if the Supreme Court decides in Henry Schein that the limitation on the arbitration clause doesn't change the arbitrator's authority to decide arbitrability under AAA rules, then there really isn't a meaningful distinction between this case and Henry Schein. Otherwise the court would have to say well if there's an exception to a general rule of arbitrability then the arbitrator gets to decide. But if a narrow subject matter is defined then the court has the power to decide. That ends up making distinctions between an exception to the rule and a rule to which there are exceptions. And that simply doesn't result in a consistent rule of law. But you know I guess the overall question though still is under the Supreme Court's cases in first options and its AT&T case a question of contract interpretation. It's a question about a general rule and a carve out and things like that. And every contract is arguably different and you have to take a look at the way a specific contract is written. I'm not sure that you know you can establish specific rules for the interpretation of every single contract because contracts are very diverse. That's true but to the extent the parties knew what they were doing when they said that the arbitrator would be governed by AAA rules and they knew that those AAA rules empowered the arbitrator to decide disputes about arbitrability it doesn't matter whether the arbitrated matter is a small percentage or a large percentage of the total amount of disputes that might be subject. There's still a delegation with the arbitrator to decide that question. And if I may I'd like to reserve my remaining time for rebuttal unless the court has further questions. Sure. Thank you Mr. Anderson. We'll hear from Mr. Baskin now. Good morning. Marty Baskin for AT&T. We begin by saying that the district court had it exactly right because the parties did not agree to arbitrate the issues arising under paragraph six which I must say has been somewhat mischaracterized by opposing counsel because paragraph six is not merely a meet and confer provision. It establishes detailed binding obligations on the company that it otherwise would not have which are legally enforceable about how to deal with new lines and acquisitions of companies that are that are required. Moreover it's the assumption was made that the agreement applies automatically to these new acquisitions but in fact it only applies to new acquisitions where there is no bargaining agreement in place and in fact the Warner Media acquisition is heavily unionized. This is a this is a neutrality agreement to organize. Well if it's already organized it does not apply and that is what paragraph six means. And we have a general rule of arbitration not applying. This is what has already been discussed and I should turn to the Shine case because as for the reasons that we said and that have frankly been identified by Judge Burrell. Shine is the flip side. It is not the same and one need only look at the very narrow question on which cert was granted in the Shine case which was discussed extensively in the oral argument there and it described by commentator as the common the most prominent theme of the argument was how narrow the question was because they assumed in the question that it was an otherwise clear and unmistakable delegation of the question of arbitrability as to the dispute to the arbitrator. And I think Justice Alito commented well once we've said that's the question we pretty much answered it and it's such a narrow question it's an artificial question. It is not the question in this case. We do not have a clear and unmistakable delegation to the arbitrator about an issue which the parties have designated as not covered by arbitration and it's ironic the union attorney isn't that just a question about how clear and unmistakable it is because there's if you think if one were to think that the incorporation of the AAA means that the question of arbitrability goes to the arbitrator at least in some situations covered by the agreement would you at least allow for that or do you dispute that? It allows it for what it's specifically limited to a section three. So it allows for something yeah that I think then we're agreeing at least on the premise which is it at least contemplates arbitrability of some things and I'm not necessarily taking issue with your proposition that well okay well the are narrow that that may or may not be true but I guess all I'm saying is by incorporating the AAA rules as expressly as this does without any kind of caveating then it's at least talking about are the arbitrator making arbitrability determinations in some corpus of situations and then if one of the parties said well this is one of those situations and the other party says well no it's not then it seems like the difference we're talking about between this case and Henry Schein is kind of a ratio question of how big or small is the corpus of things as to which arbitrability goes to the arbitrator and it's not immediately apparent to me why it at least wouldn't be the case that what the Supreme Court says in Henry Schein could bear on the cases where there's a narrower set of issues that are arguably that are subject to arbitrability and the arbiter arbitrator determining arbitrability and cases and contracts in which there's a broader set of situations in which the arbitrability question goes to an arbitrator they were just talking about a ratio at that point or my misunderstanding please sorry sorry let me just provide two two answers to that one is that the Supreme Court unless they're going to overrule AT&T technologies in that case the Supreme Court said it does make a difference as to how broad or narrow the delegation is and and also the Supreme Court said that where there's a positive assurance that the arbitration clause does not discover the dispute in question that too is a factor that is supposed to be considered so the Supreme Court has always said that there are lines degrees and this is at the extreme opposite end from what is being talked about in the Henry Schein case and I want to add one other reason that distinguishes this it's a matter of faulty pleading that the union has identified not a single bargaining unit that whose definition is improper and that needs to be arbitrary they just make this broad conclusory statement in violation of Twombly and Iqbal the standard test which the district court applied and they don't identify a single unit that pre that previously exists which is all that the arbitrator would be allowed to consider they don't identify a single unit which is organizationally different not only that they don't identify under paragraph six a single unit of warner media that is not already organized and the irony of this is they have said that our reading of paragraph six makes it meaningless well their reading of paragraph three makes the entire rest of the agreement meaningless it makes paragraph nine meaningless the party's deliberately said they do not consent to arbitration on anything except that one can I say it sounds to me like your argument at the end of the day is that the um the union's argument that this is arbitrable is totally groundless and that's what Henry Schein said still goes to the arbitrator well we haven't said that uh what we have said is that the dispute is that it's two things that the dispute at issue is totally under paragraph six which has no arbitration provision it has no delegation there is no clear and unmistakable delegation and one can say with positive assurance that it is not subject to arbitration and not subject to delegation uh to the arbitrator combined with the failure of the union to plead with specificity a plausible unit that needs to that is in dispute without that they don't get into the questions that are discussed where there is a clear and unmistakable delegation over a particular dispute there is no particular dispute identified anywhere in the union complaint and Mr. Baskin if I this is a hypothetical if I don't agree with you about paragraph six if I think that paragraph 3c1 is applicable here just just assume that that I think that's the case the parties here are disagreeing about the definition of a bargaining unit right in other words whether it includes time warner jobs that's that's what the dispute is no so if the court if if if the court decides that question then what's left for the arbitrator isn't that what's left well that that's what technology says it does not there's no requirement that anything be left for the arbitrator the fundamental question but but but paragraph 3c1 says disputes arising under are subject to arbitration under the triple a rules and under your view that wouldn't occur there would be no arbitration because it would be resolved by the district court if there is no dispute over a definition of a previously existing a green unit then that is the inevitable conclusion so I guess it's the premise of the hypothetical cannot be accepted because but under my hypothetical you're eviscerating the arbitration part of it there'd be no arbitration that's why I said it was a hypothetical if I'm right paragraph 3c1 applies then would you concede then that if we think interpreting this contract that that is subject to paragraph 3c1 would you then concede that the district court was wrong and that the question of whether uh whether it includes time order jobs is subject to arbitration right paragraph 3c3 accepting the premise of your hypothetical then we would you would agree with that so it all is a stronger case gotcha but so okay that's good so the case terms really on the broader question that you were raising about the other aspects of the contract right and whether it's clear and indisputable okay got it thank you yes it is impossible to make a finding that 3c1 applies so it's impossible what it is impossible to make a finding under the plain reading of this agreement that 3c1 apply has any application that's what the district court found he said there's no indication whatsoever that the party's delegated to the arbitrator to decide the actual dispute which is what to do with new new entities and acquisitions i see my time has run out but thank you very much can i can i just follow up i'm not following one thing which is to say if there's no dispute whatsoever what's the difference between that what where's the line between that and saying it's wholly groundless to that the dispute is arbitrable well i i'm not frankly sure what the fifth circuit meant by wholly groundless and uh but that well what do they mean other than it's not there's no mistake i mean it just sounds it sounds similar to me but i'm i'm well there are different there are different formulations and that's why i prefer to use the formulation of the supreme court in at&t technologies which it has to be clear and unmistakable on the disputing question and even where there is a presumption if there is positive assurance that's the supreme court's phrasing i think that's a good good one and there certainly is positive assurance that that delegation has no application to this case and has not been pleaded to establish facts to justify that okay thank you thank you mr baskin uh mr anderson we'll give you two minutes for your rebuttal thank you your honor uh just to touch on two points um to the extent that council is arguing that the union's submission to the arbitrator is not right and insufficiently detailed he's making a 12b6 type of argument which is an argument for the arbitrator it's for the arbitrator to decide whether the union's pleading um meets uh meets sufficient uh requirements in in order for him to decide a question uh there is a there is something that goes to the possibility that the supreme court may say that these issues are for the court that i do want to touch on it is not correct to say that the parties did not in any way delegate or delegate matters under paragraph six to arbitration paragraph 6d says except as specified in paragraph nine the union shall retain any legal rights it may have to challenge any management decision which tells you that the parties understood paragraph nine somewhere to contain an obligation a limitation on the union's ability to proceed outside the contract and when you look at paragraph nine aside from pledging best efforts to meet and confer the only binding obligation to be found in except as to disputes referenced in paragraph 3c of this agreement so that to the extent that the court may end up having to decide this question you should see paragraph 9 as being understood by the parties in paragraph 6d as providing a binding obligation that limits the union's rights under background law and the only possible uh part of paragraph 9 that supports that is the proviso that preserves paragraphs 3c so based on that it's simply not true to say that the parties did not contemplate that paragraph 3c arbitration would apply to new entities under paragraph 6 and i see my time is up but i'm anxious to answer any questions could you just repeat once more in the clearest way you can your answer to mr baskin's argument that it's impossible to read this agreement uh as as as applying paragraph 3c want in this case yes the party said just as clearly as you can what's your answer to wait the party said disagreement shall apply which presumptively means that the arbitration provision within that agreement applies paragraph 6d identifies paragraph 9 as a limitation on the union's background legal rights and paragraph 9 in turn provides only for paragraph 3c arbitration as the only meaningful form of limitation on the party's background rights and remedies so to that extent the parties agreed that paragraph 3c counsel will take this case under submission
judges: Srinivasan, Tatel, Rao